May I please the court? The arbitrator in this case concluded that Mr. Mayberry, quote, engaged in the activity for which he was terminated. But when you compare with what he was charged with in the specifications, which appear on page 48 of the Joint Appendix, with what the arbitrator found he actually did, you see that that conclusion is not so. Looking at the specifications, Mr. Mayberry was accused of, on more than one occasion, squeezing AF's arms really tight and picking him up by the upper arm and slamming him into the seat. He did no such thing. The finding was, based on Mr. Mayberry's own credited testimony, that on one occasion, when AF was disturbing the students he was sitting among, Mr. Mayberry picked him up and moved him to another seating position on the floor a few feet away. The specification says that AF's mother observed a finger-like bruising on his bicep, but even the specification does not accuse specifically Mr. Mayberry of causing that. And when AF's mother asked her son, how did you get the bruise, he said he didn't know. How many original charges were there? There were four specifications. And how many of them were sustained ultimately by the board? She did not, the arbitrator did not sustain any of the specifications. She instead found that other conduct that Mr. Mayberry did, in a much more benign manner, violated the, well, constituted inappropriate touching. By doing that, she ignored the rules of this circuit, which when you use a... The only charge that I found the arbitrator giving some weight to was charge B, dealing with J.N., this particularly difficult student, right? Is that the one sustained charge? Well, when I compare the charge itself with what the credited testimony of Mr. Mayberry did, Mr. Mayberry testified that on a few occasions, he positioned him when the child was falling out of or slouching in his chair. The specification says that on multiple occasions, you used force when you picked him up by his arms and shoulders and pushed him down to a seated position at his desk, which is not what would happen or found. The specification says that J.N. Is that the only sustained charge then? Well, I would say that that wasn't sustained, particularly when you read the whole charge. I understand your argument on that, but it's clear that the other three, there was not evidence for. So we're down to one. I think that Mr. Mayberry admitted that on one occasion each, there's two other students, J.M. and J.L., whom he also assisted to sit upright in their chairs when they were slouching or falling out. But that's, of course, not what he was charged with. So if we find, if we affirm to one single specification, or can we affirm to one single specific specification if it's supported by substantial evidence, doesn't that affirm the entire charge? If you were to find that that, well, first of all, you can't split the charge. Specification B has several components. One cannot split the charge, and the case that speaks to that is... But if there's various specifications under a charge, and we find as to one specification, then that proves the entire charge. But then one looks, but if the most significant charges are not sustained, then the court must impose the maximum reasonable penalty for what actually was sustained. In other words, it does not necessarily, when there's multiple, this case law in this circuit, that when there's multiple charges, and the case is, cases are... Do you have boroughs in front of you? So I think that says that we have to affirm if one specification is proven. You might affirm the overall charge of one specification, but you look at the penalty to see if, when you have cases of multiple charges that are not sustained, you take a careful look at the penalty, and then mitigate to the most reasonable penalty for the charge that was sustained, if you find that that charge in its entirety was sustained. And your argument is that none of the charges was really in its entirety sustained. That is correct. There are two that, to some extent, were supported. Well, no, I would say there are two that to some extent we can identify what they were talking about, but the conduct was of an entirely different nature, very benign, merely assisting children sitting upright in their chair, or moving a young man who wouldn't move himself a few feet away from a colleague he was disturbing. But for clarification, there's only one charge here. Well, that's correct. But when you look at the... And there are various specifications under the charge. That's correct. But I think there's also two other points that I think are very important to our case, and that is, in sustaining this overall charge, the arbitrator found that Mr. Mayberry Broke violated a rule that says you cannot touch a child other than to protect his or someone else's safety. That rule doesn't exist. What she perhaps had in her mind was Section 8 of a Memorandum of Understanding, which appears on page 147 of the Detroit Appendix, a negotiated agreement between the teachers union and the agency, which gave assurances that if a teacher uses reasonable force to restrain a student from harming himself or herself, or destroying property, that that shall not constitute child abuse or corporal punishment. That's not to say, that is not a rule of conduct that says any other form of touching a child is punishable. It is merely an assurance given in an agreement with the union that teachers would not be disciplined for that particular circumstance. Right. I read that DOE letter to say that this is an exception, that here's when you can't touch a child or restrain them or move them. And that's only when you're going, if it's to prevent the student from harming himself or herself or destroying, harming others or destroying property. I think it was an assurance to the union that if that happens, a teacher would not be punished. That is not itself, however, a rule of conduct, nor is it necessarily saying that any other form of touching or restraining a child is prohibitive. For example... Can Mr. Mayberry admit to moving the children around on occasion and... He moved one child on one occasion and assisted three others in sitting upright in their chairs. Okay, so those are different specifications. Well, I don't think that that's what the specifications read. The specifications said he hit them, he slammed them down, he pushed them down. The specifications are written in terms of violent conduct, not what Mr. Mayberry did. And in fact, another important point is that the deciding official and the reviewing official, the two DODS officials that made the final determination in this case, said they treated this as a case of child abuse. Said that they decided to terminate him because he engaged in child abuse. As the agency admitted in their brief, he wasn't even accused of child abuse. That wasn't any of the accusations or allegations. To quote, for example, from Mr. Thompson, the superintendent, this is on Joint Appendix 296, why did you make the decision to remove Mr. Mayberry? Because it was an accusation of abuse of very young children over a period of time. Page 299, he once again was asked were there any other comparable cases of child abuse. He said, on the physical abuse of a child, I'm not aware of any. Dr. Bristol, the DODS regional director, on page 513, can you explain why you decided to deny the grievance and uphold Mr. Mayberry's removal? Answer, basically the allegations that were made against Mr. Mayberry for child abuse were upheld. She says that again on page JA 521. You stated that you considered the allegations of child abuse in this case very serious. Answer, yes, I do. The agency admitted he wasn't even charged with child abuse. But in their mind, and perhaps if the charges were proven, the charges and the specification were proven, it may well constitute child abuse. How do you respond to the removal letter, the Notice of Decision to Remove at JA 061? And it's on the third paragraph. It says, you do not dispute the facts underlying the charge that you inappropriately touched multiple students over the span of at least two school years and are only willing to charge, you generally deny any misconduct, but you offer no rebuttal to the factual allegations contained in your proposal letter. Well, that is not correct. In fact, if you look at the response to the proposed removal, which is on page 52, he does deny it. There were general denials through counsel that he did nothing of the sort, and he didn't do anything of the sort. And also, Mr. Thompson, who issued that letter of removal, saying that you did not deny, was asked about that on examination. On page JA 308, the transcript, he was asked, you stated earlier there was no denial or admissions. Answer, generally denies any misconduct. Question, but there is a denial. Answer, yeah. He admitted on cross-examination that the allegations were denied. Should we say, excuse me. Well, I noticed that's on the record. It says there were no prior disciplinary actions. Were there any warnings of any sort after the first of these events or parent complaining or whatever it is that brought this to a head? There was one parent complaint, and then the next day he was removed from the classroom and hadn't been back since. And that was it? There was no warning that you were overstepping or whatever it is? That was it. Now, in the hearing, he said he was, quote, trained in corporal punishment when he was asked about that. He said he was merely reminded at the beginning of the school year not to engage in corporal punishment. Interestingly, the arbitrator found that he violated Dodd's rules against corporal punishment. However, he was not charged with Dodd's rule of engaging in corporal punishment. That's not in the specifications of the charge. And also, interestingly, the Dodd's policy in corporal punishment is simply not on the record. It was never introduced in the case. Let's hear from Ms. Vanneman. Thank you. Ms. Vanneman, isn't this just a generational misunderstanding? He was 27 years in service. That means he had been there a long time. Under the standards of inappropriate touching that this applies, every single one of my teachers from the 1st to the 10th grade would have to be removed for swatting me with paddles. By the way, I deserved every one of them. I was a very disruptive student, and I needed every bit of that corporal punishment that I received excessively. But isn't this inappropriate touching is usually a sexual connotation. Here, he moved people. Boy, they really moved me when I was a kid. Your Honor, respectfully, this is not a generational misunderstanding. It's up to the school to set the policy, and maybe different schools have different policies in different eras. But the regulation here that was cited in the Notice of Proposed Removal 5751, which is... A good record for 27 years, and he doesn't even get a warning? He didn't get a warning because the school never knew about it until that first day when... No, the parents that came forward said he was a wonderful teacher. No, not all of them, Your Honor. Not all of them. We understand that. That's why we're here. The warning... What happened was, on one day in January, AF, and I use the initials of the child, complained to his mother that he didn't want to go to school because Mr. Mayberry was hurting him. But ultimately, what the school thought had happened was never proven. The school never charged him with child abuse. Respectfully, Your Honor, at 48 of the appendix, the charge, one charge, was inappropriate touching. The touching was admitted... But all of this, this whole incident, grew out of an abuse... Allegation. Allegation. And to the extent that Mr. Mayberry... And suddenly it becomes inappropriate touching charge. Your Honor, the charge, one charge, inappropriate touching, four specifications, three of which the arbitrator sustained. Her decision starts at page 23. But this certainly, the dimensions of this change. We start as child abuse, and you get pictures. As I picked up the brief, I thought, wow, this guy must be an animal. And then I realized what he did wouldn't have disciplined me at all. It would have encouraged me to be worse. Your Honor, the regulation 5751, which is at page 772 of the appendix, which clearly applies to Mr. Mayberry, provides that a teacher may not use physical force to alter behavior of the children, whether... It seems to me that the evidence is that there was no force involved. I mean, he... Actually, Your Honor, Mr. Mayberry... He repositioned somebody. Mr. Mayberry testified... He took a student and turned him around in a chair to face the front, I guess, or to face in the right direction. And it appears that, yes, he touched the students, but I find it difficult to see any evidence at force. I mean, I'm like Judge Rader. I had force used against me. I know what force is, and I know when I read it and when I see it. Your Honor, at the very conclusion of Mr. Mayberry's testimony, page 749 of the appendix, after describing all the behavioral problems that he was dealing with, using the term force himself throughout his testimony, he said he used physical force with respect to four students during the 2009-10 school year. So he testified in his own words that he used force. He said physical adjustment. He used the term force throughout his testimony. And repositioning. He used lots of different words, but we all know that what he did was secure a couple of students by the arms and repositioned them. It was to alter their behavior, which is prohibited by the regulation 575. It costs a 27-year teacher their job without a warning? Two things, Your Honor. It was a pattern of behavior because it continued for two school years, which he testified to. It applied to, in specification D. Was there any effort made to find out if he was rehabilitatable? I read the conclusion. He's not, they said. But what effort was behind that? Well, Your Honor, the arbitrator's findings, looking at the Douglas factors based upon the testimony, was based upon actually Mr. Mabrier's testimony because he did not seem concerned that he might have hurt these children. And when he testified, he moved these kids, he used his hands to pick them up and move them, or he used the word grasp. He would grasp the kids to pull them up in the chair or push them down. Both of my parents were teachers. My dad was a football coach. He used to kick the kids in the butt when they weren't moving fast enough. Should he have been removed? It depends what the policy was at that school at that time, Your Honor. The regulation that applied here, that's not in dispute. Well, when he started, it was very clear that that was expected and demanded. Now, what if that policy changed and his habits hadn't changed? You're talking about Mr. Mabrier. Well, I'm talking about my father, but Mr. Mabrier fits the circumstance perfectly. Here there was one regulation that applied at all times that he was not permitted under this school's policy, which the court can't really second guess, he was not permitted to use physical force to alter behavior. What is inappropriate touching me? Did I just inappropriately touch my colleague? Touching is clear. She didn't give me permission, then I touched her. Was that inappropriate? Inappropriate here, Your Honor, is something used, defined by the regulation, to try to alter the child's behavior. A touching that might have been a gentle, positive, supportive tap on the shoulder to a first grader might be okay. But what happened in this case was there was a pattern of this inappropriate touching. At most we have four incidents over two years. And believe me, knowing how students can provoke, require some kind of discipline, this sounds like a minor amount of correction. Your Honor, two points to get back to the question. The deciding official decided that he could not be rehabilitated. And the arbitrator, in looking at his demeanor, he didn't really seem to care whether he had hurt the children or not. He didn't know, but he didn't seem to be that all concerned. And when the principal and the supervisor decide, I no longer trust this teacher in a classroom all by himself with 21st graders, the court has to give a lot of deference to the choice of penalty. There's no basis for mitigating the penalty. The school policy, does it refer to physical force? Yes, at 770. So when I look at the testimony, Mr. Mabern, JA 749, it's quite striking. He says, they ask him, today you testify you used physical force. The degree of force is contested, but you used physical force on at least four students during 2009-2010. Is that correct? And he says, I physically adjusted. Question, at least four students. Is that correct? Yes. Physical readjustments or physical force is not part of your discipline policy, is it? So we have the equation of physical force and the physical adjustment, which I'm not sure that the school policy supports that. But then he goes, no. And then he goes, at no point did you advise parents that you were going to be readjusting. And finally he goes, that's true. I never did. Well, how can he? I mean, if the student needs readjusting, like Frank turned face up front, do you really expect them to notify the parent first before you do that? Your Honor, he had his own discipline policy that he gave to the parents at the beginning of the school year with a progressive set of measures where he would warn the child, maybe put the child's name on the blackboard, and if need be, contact the parents and the principal. He never did any of that. He never asked for help. He basically never told the parents he was going to be physically moving the kids around in direct violation of Regulation 5751. And, again, that's at 772 of the appendix. There was proof with respect to specifications A, B, and D, because D involved the four students over a period of time. This was a pattern. The school never knew about it until the first child came forward, so there was no ability to give a warning because they never knew. He's in the classroom by himself. When an allegation of child abuse comes up under the regulations, the school was required to report it to be investigated, and then it was within the discretion of the principal to put him on paid administrative leave. With respect to specification B, that involved J.N., the special needs student who hadn't yet been diagnosed but was, and the specification was on multiple occasions, you used force when you picked him up by his arm or shoulder and pushed him down to a seated position at his desk, and that's what Mr. Mayberry testified that he did. But he said, I had to exert enough force to lift him, not just lift, just to sit him up, but I wouldn't characterize it as excessive force. It wasn't light as a feather, but what's inappropriate here? The whole definition of this instance, inappropriate touching, is so vague as to raise questions in my mind as to whether this was inappropriate. Actually, Your Honor, the charge was inappropriate touching, one charge, and as long as even one of the specifications is sustained, the court can sustain this removal. The notice expressly referenced DOD, the regulations. On multiple occasions, note that he used force. And he did use force. Well, I think that even when he was being questioned, the questioner, whoever that was, said that the use of force is contested. So let me ask you this. Does inappropriate touching encompass any degree of touching? Go back to what Judge Rader said. The touching was inappropriate here because, again, it's 772. This is the regulation. A teacher can be removed for using physical force to alter the behavior of a student. He testified that… Physical force? Force. Okay. So is putting your hands on the shoulders of a student and then telling them, Frankie, face to the front, is that physical force to the degree that we're talking about of inappropriate touching? Under this regulation, that applies, yes, because it's not permitted to alter behavior. But if I'm a classroom teacher and I'm standing in front of my desk, I mean in front of the door, and as students come in, I put my hand on their shoulder and I say, Frankie, you go sit over there. Betty, you go sit over there. Susie, you go sit over there. I'm directing their steps. I'm modifying their behavior. Is that inappropriate touching? Your Honor, the record didn't address that. But that's a scenario I'm giving to you. My view would be directing a child where to sit, a gentle touch might be okay. That's not what happened here. On repeated occasions, he used his hands to either pick up a child from under the shoulders or grasped, was the word he used, grasped the child and moved them, or else picked them up in the chair and pushed them down because they weren't paying attention. That's not permitted under Section 2E of the regulation which was cited. The notice of removal, just to pursue this, notice of removal tells him he squeezed his child by the chin. Then he calls the mother to find out if the child was hurt or whatever after being squeezed by the chin. And that's cited as a ground for removal and an admission of inappropriate touching. I mean, it does seem extreme. Your Honor, that was the one specification, C, for which Mr. Mayberry was not questioned. That was not sustained, so that's not really an issue. But the fact that the three others were sustained is another. Notice of removal. Yes, but under Burroughs and Guise, another case from this court, G-U-I-S-E, the court can sustain the penalty of removal if one or more of the specifications are sustained, even if not all of the specifications are sustained. It gives a sense, perhaps, of the magnitude of these infractions, which goes back to if, in fact, not if, except everyone agreed that those events took place. I gather that there was no disciplinary action taken, no warning, stop squeezing children by the chin? Your Honor, there was no warning because the school didn't know about it until this one child came forward and made the allegation of child abuse for which the German police investigated and the CID did an investigation. The agency didn't charge him with child abuse, but Mr. Mayberry, he got a warning because the regulation was in effect and he wasn't permitted to do it. He didn't get an official warning, you can't do this anymore. The school didn't know about it. And for a school to know that a teacher has violated the policy, there are serious allegations of child abuse that by law must be reported, they removed him from the classroom the next day, put him on paid administrative leave for almost a year until the notice of decision went out and the decision while they investigated. And then what they charged him with was the one charge, inappropriate touching, which was sustained because three of the four specifications were sustained by his own testimony. So when I read Burroughs, it doesn't say that proving one specification, it doesn't say that we must affirm. Correct. It says it's sufficient. So it's not the case that we must affirm the charge or that a charge is proven if one of the specifications is found to be correct. That's correct because the analysis is basically would the agency in its discretion have imposed the same penalty in here given... So under Burroughs, we have that same discretion. We do not have to affirm just because one charge or two charges out of four were found to be or upheld. Three of the... Not specification, I'm sorry. Yes, three of the four specifications. And based on this record, Your Honor, it would be we believe that the court should affirm because it's clear from the... So are you asking us to look at the overall record, the 27 years, et cetera, and looking at whether we must affirm? No, I'm asking you to look at the fact that the proposing deciding officials and the grievance, Dr. Brassell, the area director for all of Europe, looked at these facts and given that the regulation was clear-cut, a teacher may not use physical force to alter the behavior of first-grade students. This was a pattern of behavior that the school didn't know about. These were young, very vulnerable children, children who had a parent either deployed in combat or about to be, that Mr. Mayberry testified that he did this when he was annoyed or at the end of his rope or at the last resort, and those sites are at Appendix 696-726-730. While the arbitrator characterized that, having observed his demeanor, as that he was angry, even if he didn't admit that he was angry, in his own words he said, I did this because I was at the end of my rope. I'd lost patience. It was a last resort, he said, even though he didn't follow any of his own progressive discipline policies, didn't tell the principal, didn't ask for help, didn't tell the parents, would just, if he was frustrated or at the end of his rope, he'd pick these kids up, move them, or push them down in the chair and pull them up in the chair so they would pay attention and not be so disruptive. It's a tough job to be a teacher, but that's the job he had, and that's the responsibility he had for these very young children. And the arbitrator, having looked at all the evidence and observed his demeanor, felt that his inappropriate touching by using physical force to address these behavioral problems, not to address the safety of the children, could cause, one, violated the regulations of a final thought force, Ms. Benham. And caused damage to these kids, and they could no longer trust him in the classroom alone. Thank you. Thank you, Ms. Benham. Mr. Hearn, you have two and a half minutes. Very quickly, the regulation that Ms. Benham says that he violated was not the corporal punishment or the child abuse or the classroom management policy at all. She decided it was simply a table of penalties in the disciplinary rules that there's no evidence that Mr. Mayberry was ever told to train or any of the teachers were ever told to train. Actually, the using physical force to alter behavior of a student is listed under child abuse and related issues. For which he was not charged. And there's, for which he was not charged, and also there is no evidence that any of the teachers were ever told, Mr. Mayberry or any other teacher, and there's no policy guidance or given to teachers or whatever saying you cannot touch a child to alter their behavior. Including helping them when they're falling out of a seat. Secondly, the second point to make was there was talk here about a pattern over two years. The only thing that was alleged outside of the immediate school year when this took place was specification C from the prior school year which the government's brief said was dropped before the arbitration and there was no evidence presented at the arbitration. So we're not talking about a course of conduct over time. We're talking about a discrete period in the 2009-10 school year. And finally, the point to make would be that a case of Quinton, 808 F2nd at 829 and LeChance at 178 F2nd 1246. When many of the original charges are not sustained, then the agency-imposed penalty must be scrutinized carefully. Thank you.